4-5, T.F. Harbor v. City of Rockwall Mr. Addison. May it please the court. Pardon me? Mr. Addison. Yes, yes your honor. May it please the court, Rick Addison and Nolan Knight here on behalf of T.F. Harbor. Before the court on the Northern District of Texas involving a dismissal under Federal Rule of Civil Procedure 12b-1 of our Contracts Clause claim under the United States Constitution. In connection with its decision, we urged the court initially that the decision made by the trial court didn't abide by the traditional and required standards for 12b-1 dismissal because the court conflated merits analysis with the rules and requirements for a 12b-1 dismissal. And in connection with that, the court went on to find four things. That we had not pled a fairly traceable requirement. Understanding that we had not had reasonable expectations concerning future zoning on the property. That there were issues with the ordinance and the development that prevented the matter from being fairly traceable. And that we did not demonstrate a substantial impairment or did not plead a substantial impairment. Did the court rule that the dispute wasn't right because you are not in fact on notice of a breach from Sinema? It's interesting, your honor. The court didn't really rule on rightness, but a part of its analysis appears to head towards rightness. And he took that up through the fairly traceable element and in connection with that element... Counsel, what is there here except what the ordinance is? Pardon me, sir? What's before us, what's your claim except what the ordinance is? Right, our claim is... Why can't the 12b-6 decision made just on the basis of what the ordinance says? Well, I think the 12... The 12b-6 decision or the 12b-1 decision? Well, either one. Well, the ordinance itself we say results in an impairment of our contract with a lessee named Sinemark. And the reason for that is that it allows zoning on an adjacent property that was taken up and restricted prior to the time of the ordinance. And so the court said that isn't enough. And remembering of course that at this stage of the proceeding, we're talking about pleading. It's complicated because we also move for a preliminary injunction. So in connection with the preliminary injunction, there's admittedly a wealth of merits evidence before the court. When the court takes it up under 12b-1, however, you're back to the point where every element of the plaintiff's pleading is taken as true and you can't move outside of that. Now, with respect to the first issue he takes up about fairly traceable, we pled at page 8, paragraphs 31 through 34, we specifically pled alleged acts of the city that led to this particular impairment. And that's set forth on those pleadings. On page, in paragraph 237 of page 45, we really conclude all of that by saying T.F. Harbor's obligations under the Cinemark lease were impaired. In the earlier sections, over on page 8, 31 through 34, we go into detail about how we objected at city council meetings. We went to them and said you're going to impair us. And put all that in the record and pleaded it. Now, what the court found in essence was that the passage of the ordinance remembering that Article I, Section 10 of the Constitution deals with the passage of a law that impairs. Nothing more than the passage. Judge Fitzwater said that impairment, the passage of that law happened way over here at the start and it's in essence too remote to the completion of the Fairly Traceable. And that was the Fairly Traceable initial decision. There's some permutations on it I'll take up in a moment. That really is contrary, among other doctrines, to the holding in Bennett v. Speer in the Supreme Court where there it's pretty clearly established that actions that enable a third party to take other actions satisfies the Fairly Traceable element. The court acknowledges in footnote 5 of its opinion, obviously, that only the city can pass the ordinance. You might also say you can have an ordinance without a development, but you can't have a development without an ordinance. And here, the enabling act, the essential act of impairment occurs through the city's ordinance. That is pleaded for Judge Fitzwater to make the determination that he did. We respectfully urge he had to go behind the pleadings, look further than the pleadings, and in doing so, conflates the merits in a way that's reflected, I think, most recently in this court's decision in Duarte v. Louisville from last summer. So, initially, in a direct analysis, he concludes there's no impairment because it cannot be traceable to the ordinance passage. He then graphs a couple of other elements on there that are also important. He says we did not plead substantial impairment of the contract, which is a necessary element, as this court knows. You can't just have impairment. It has to be a substantial impairment. And what we plead at page 3, paragraph 9, to start the substantial impairment is we recite how at shopping centers like these, frequently, the theater is the big dog tenant. And the theater at these shopping centers has the bargaining power, because of the nature of leases with them, to command certain requirements within their lease that are important to them. And while it may not be important to everyone, signage, access, and parking are important to CentiMark, and were important under this lease. We plead that. Then we turn, and in page 13 to 19, we take up all of the complaint. We take up all the specific instances of the lease that are being impaired. And then lastly, and most importantly, on page 45, starting with paragraph 238, we talk about the harms that may occur to us, which are substantial. Now, what are those, and in what context? In the context of this lease, our client who foreclosed on the property was not the original lessor. But as a part, when they foreclosed on the property, they, of course, inured to all the leases that were in place. In connection with that, that lease requires us, not only can we not impact parking, access, signage, in a way that is different from the restrictions in our lease, we cannot quote, permit anyone else to do so either. And it's that phrase within the lease that gives rise to the timing of the action, Your Honor. And it's also why we would say it's not, why it is right, if rightness were the standard. And that's because... Well, they haven't been sued by CentiMark, nor noticed a breach. Is that right? Excuse me, Your Honor? Has CentiMark noticed a breach? No, they have not. And nor have they participated in the case, nor were they joined by any party. And how could they even allege one when you're carrying up to the Fifth Circuit your lawsuit against the zoning ordinance? Oh, I don't think, well... Certainly not permitted anything. We certainly don't think they can, but we think that if we hadn't done so, they could have. Because this is the only way we can go attempt to prevent another party, or permit another party to violate these restrictions. So the actual injury is your legal costs, and not the potential breach with CentiMark? No, the act of injury is the passage of the law with respect to the city, and it's the breach of... No, I'm saying your injury. You're the plaintiff. Right. Because you're saying that you've been placed in breach, and you can't carry out your contractual obligations, right? Well, no, what we're really saying is... Or are you saying on behalf, are you doing a use tertiary? We have the position that we were required to bring the lawsuit prior to anyone else being permitted to violate the restrictions in the lease. Right. And I recognize... So what's your damages? Your damages are your legal costs, because if you lose, you're not in breach with the CentiMark, but you have not permitted the... You have not, quote, permitted or acquiesced in any development going forward under the ordinance. I think that may be right, Your Honor, but that doesn't mean that we should be standing, or we shouldn't have brought the lawsuit when there's an injury, in fact, if we permit someone to violate those restrictions. And I might add the harm that's involved, which is what's found at page 45, paragraph 238, is that if we don't fulfill that obligation to prevent other parties, then they can declare a default termination, and even without termination, they can declare a default and get a renovation. I mean, what's your argument that you... Suppose you had not filed the lawsuit, that you just appeared at City Council, said we object to this zoning ordinance because of our lease with CentiMark, and nothing more. How could that possibly be construed as, quote, permitting? I don't know if it would or would not. I would say that's a gray area, but rather than subject a client, or rather than the client wanting to be subjected to that, we took the position that the law was passed, it impairs us, and it does, and that the City, as well as Rockwall Rental Properties, should have been liable under their various obligations. The court also takes up two other points of analysis that are important. One of them is that the court said, you know, this doesn't impair you because you didn't have the reasonable expectation that no zoning would occur on this adjacent tract, Tract 7. And once again, the court goes behind the pleadings to make the reasonable expectation analysis. What our pleadings say, however, is that in essence, we entered into a lease. Not only did we enter into that lease with those restrictions, but we also filed the memorandum of the lease on record to put other parties on notice. At the time the lease was entered into, there was a different lessor named Mariah. And Mariah owned both these tracts. Also in our pleading, we spent ten... But when you bought it out of foreclosure, you just bought the one tract, right? That's right. That's right, Your Honor. We only had Tract 5. Tract 7 is where the development is going to occur. But as to the reasonable expectation argument, two points. One, the same owner at the time, Mariah Bay, owned Lot 5 and Lot 7. And so it knew exactly what restrictions it was putting on its property. And then secondly, and this is the important point in the reasonable expectation analysis, the court concluded that we could not have a reasonable expectation that Lot 7 would be free from commercial zoning. And we agree with that. If that was our reasonable expectation alone, the court would be right. But what our reasonable expectation was after the lease and its recording was that no commercial development would happen on Lot 7 unless it was in conformance with the terms of the lease. I mean, I'm sorry to say but that's really stretching commercial reality as far as I'm concerned. To even allege that you have no reasonable expectation that when you've only bought half the property and the other half is from a bankrupt or someone for whom there was a foreclosure that something's not going to happen to the other property in the marketplace. Well, Your Honor, that would be true as to Lot 7 had it not been restricted through the lease in this memorandum of the lease that was on file. We're not saying, if I didn't make it clear, it's not our position that our reasonable expectations were no development. It was that sure, there'll be commercial development. We talk about the zoning that had come before that allowed it. It's that there would be no development outside these restrictions that the parties had agreed to. Do you have any authority where a restricted covenant is still in force but the government takes some conduct that would have been an essential precondition to authorize offensive conduct by a third party and that that somehow satisfies the fairly traceable requirement? You say in your brief that it's repeatedly been held that that would be sufficient, but I didn't see what cases you cite if any that would hold that it's repeatedly been satisfied that that's enough. And I'll get a couple more sites, but kind of the granddaddy case on does authorization equate to fairly traceable is the Bennett-Spear Supreme Court decision, which says when you take the authorizing act and you allow a third party to engage in conduct and then you're harmed, you can trace that back to the authorizing act. Wasn't that some kind of police misconduct case? Pardon me? What kind of case was Bennett v. Spear? I think it was a police misconduct case, Your Honor. But the ordinance doesn't affect the ability to enforce those restrictive covenants. Well, I don't know the answer to that because no one's tried to enforce those restrictive covenants, Your Honor, but there is the doctrine there that says if there's a restrictive covenant a zoning ordinance cannot supersede it or overcome it. Right. Chances are pretty clear that the zoning doesn't aggregate the covenant, and so as long as the covenant is there the act of the city didn't do anything. Well, the act of the city authorizes development regardless of the restrictive covenant that impairs the lease, and it impairs the restrictions that come from the lease, Your Honor. Okay, thank you. You have time for rebuttal. Next we'll hear from Mr. Biddle. Ladies, we are under the understanding that someone in the front row is audio recording our oral arguments, and that's contrary to the Fifth Circuit policy. So I would ask the people who are doing that, we know who you are, to stay in the courtroom after the arguments are concluded and let the CSO and our courtroom deputies speak to you about this, please. Thank you. All right, Mr. Biddle. May it please the court, I'm here representing the city of Rockwall. This is really a very simple case. There are two things that require affirming Judge Fitzwater's judgment. The first is one that Judge Elrod touched on that is critical, and that is as a matter of Texas law, a zoning ordinance does not impair a valid deed restriction or a contract between private parties. It simply doesn't. So to the extent that we have authorized something, we haven't authorized anything that violates a contract. The city doesn't take any position on whether the deed restriction is valid or not. The position is exactly the same now as it was before the ordinance was passed. I don't think it's a legal matter. It would make any difference at all, because the legal effect is zoning is simply a different process. It is one part of the development procedures. The other is satisfying any neighbors you might have if you have a contract with them that you're not reaching their contract. It might make it more ripe, but it doesn't affect the fundamental principle. Let me ask you a question. Assuming the argument of this is true and the restriction that's on file, wouldn't that set them up for a takings argument against the city? They didn't make that argument, but because that's clearly not right. I guess I don't purport to be an expert in takings arguments, but certainly if there was an ordinance that had that effect, that had the effect of completely eliminating the value of a property, but I don't think even their allegations at this point would reach to that level. The second principle is one of just basic procedural law, and that is under both 12b-1 and 12b-6, the focus must be on the allegations of fact in the complaint, not legal conclusions. And the question is whether those facts show standing and a potentially viable claim, a plausible claim. Those two principles if applied to the record of this case lead to three conclusions. One is that TF Harbor did not show that it has standing to challenge this ordinance because it did not state facts that show a concrete, actual, imminent injury. The rightness gets folded into that, but it can't show an injury at all as a result of the ordinance. The second is, based on the same principles, that TF Harbor did not state a claim for impairment of contract because it did not state facts showing a substantial interference with its rights or obligations under the CentiMark lease. It has the same rights it had before the ordinance that it has now. The third is, and I don't think there was much discussion of this, but clearly TF Harbor has no viable claim that the ordinance is vague. It's important in reviewing this matter, although as a somewhat extensive record, the only portions of the record that need concern in this court is the complaint and the ordinance. Take me back to the temporary injunction. The district court heard that, right, and ruled on that as well? It did not hear it. It had pleadings before it, and it ruled on it at the end of the judgment, essentially saying, having found there is no standing and no claim was asserted, I don't reach the merits of whether there's any need for injunctive relief. When you say it didn't hear it, are you trying to distinguish between having oral hearing and a written ruling? Yeah, I misspoke. I mean, it certainly was before it. I didn't understand what you said in response to that. In fact, there was no hearing. The entire ruling was based on the papers and the motion to dismiss. The important thing about the complaint is the first step under Iqbal is you go through the complaint and you set aside the purely conclusory assertions. There are at least seven paragraphs in this complaint where T.F. Harbour says the ordinance impairs our contract. That's a conclusion. That is not something the court needs to credit or give any credence to. The next step is to look at the facts that were pled. And if you look through the paragraphs, it's a lengthy complaint, but if you focus on ordinances and zoning, as counsel said, the deed restriction was put in place because of a recognition that there might well be additional zoning. And as it walks through the history, every time the city amended the zoning ordinance concerning this property or any adjoining property, T.F. Harbour confirms that did not affect its rights under the lease because it had filed the deed restriction, and that trumped any changing ordinances. It does that in 2008, in 2010, in 2011. It never explains how that is any different from an amendment in 2013, a new ordinance. The legal effect of those changes is precisely the same, and that goes back to the first principle. Ordinance 1316 did not change the legal situation. So look at the elements of standing. As I said before, it was their duty to plead facts, establishing a concrete, particularized, actual or certainly impending injury under the language of the Clapper case, the U.S. Supreme Court. And those facts are simply not alleged here. The ordinance, as we've said several times, does not trump the deed restriction or the contract. T.F. Harbour has the same rights now it had before the ordinance was passed. And the facts it alleged actually negate any claim of injury by the new ordinance by citing it was not injured by any of the previous ordinances. T.F. Harbour's arguments are simply flawed in reaching out to find standing, and there's not a broad standing right that any act authorizing conduct creates standing, particularly where whatever authorization is given by a government action is only one step of many in a process and doesn't reach to the ultimate conclusion. And similarly under the Contracts Clause, property has been zoned for commercial development at all times. There's no question about that. The reasonable expectations, even as stated in plaintiff's briefs and appellant's briefs, are that the expectation was that they would be protected by their deed restriction. That expectation hasn't changed. If there are no further questions, I will give back any other time. Thank you. We don't have questions. Mr. McElhaney for Rockwall Rental. Yes, Your Honor. Thank you. I'd just like to say What's Rockwall trying to do to interfere with these people? What is Rockwall Rental trying to do? Nothing, actually. Just to explain what's going on and what gets lost in T.F. Harbor's argument is that in order to do the development that Rockwall Rental wants to do, it has to do two separate things. It has to satisfy any municipal zoning regulations of the City of Rockwall, and separately it has to steer clear of any private state law restrictive covenants that may exist. Now, Ordinance 1316 may well help Rockwall Rental with respect to the municipal zoning requirements, but no municipal ordinance can do anything to affect the state law private restrictive covenants that T.F. Harbor alleges exist and burden Lot 7, which is one of the lots that Rockwall Rental has purchased in order to start to try to develop plans for this multi-use real estate project. And so that's the fundamental distinction that has to be made. There are two different sources of rights or laws here, and the ordinance has no effect, as Judge Elrod noted. It goes back to 1941 and Spencer v. Maverick, that under state law, a city has no power to override a private contractual right. That contractual private contractual right, to the extent it exists, and to the extent that Rockwall Rental may be violating it, and just for the record, Rockwall Rental is disputing both of those things. Most importantly, we're disputing the conception that we have even so far is going to violate any restrictive covenants, but that's a state law issue concerning whether or not this restrictive covenant has been breached. So in the end, the ordinance simply has no effect on whether or not this state law right still exists. That leads to two conclusions that Judge Fitzwater built into his opinion. First, Rockwall Rental has no standing to pursue its federal constitutional claims because what T.F. Harbor is complaining about, which is fundamentally building some development that it claims is going to violate its restrictive covenants, that's not fairly traceable to the enactment of the ordinance because the ordinance can't affect the private state law contractual right. So the fairly traceable element of standing isn't met. It also shows why there's no contract claim under the 12b-6 analysis. The very first question under contracts clause claim is, is there a substantial impairment of a contract? Well, within that question is, is there an impairment at all? Judge Fitzwater's opinion said, well, we'll assume there's impairment, and he went on to look at substantial impairment. But this case is easier than Judge Fitzwater realized because the ordinance has no effect on the state law private restrictive covenant, there's no impairment whatsoever. And in fact, I think this is built into some of the questions that the panel had for T.F. Harbor. That state law claim still exists. And in fact, T.F. Harbor asserted that state law claim as a pendant claim in the federal court. But what the problem with this case is that T.F. Harbor is trying to create federal jurisdiction where it simply doesn't exist. Judge Fitzwater recognized that, dismissed the federal claims for lack of subject matter jurisdiction, and did not rule on the motion for preliminary injunction simply because he had no jurisdiction, denied it without prejudice, and dismissed the whole case. Those state law claims are still out there. T.F. Harbor tried to assert them. They simply do not belong in a federal court. And that's precisely what Judge Fitzwater held. So, there's no standing under the fairly traceable element. There's no contracts clause claim. I mean, we haven't even talked about the due process claim, but the briefing on T.F. Harbor really seems to abandon it and really just say, well, since due process is kind of close to the merits, the district court probably should have went ahead and ruled on the merits of our preliminary injunction. Well, the court declined to do that, having found no federal jurisdiction, no standing. What I'd like to focus on with the rest of my time is that there are alternative grounds that are maybe easier for this court to reach to affirm the dismissal. One of them is the fact that, and I think Judge Jones may have alluded to this, T.F. Harbor isn't really asserting its own rights. It's asserting the leasehold rights of Cinemark. But Cinemark isn't here. So, it effectively runs afoul of the third party standing doctrine. The Supreme Court in the Kowalski case said a party, such as a plaintiff, really only has the right to assert the claims of third parties if there's a close relationship between those two parties and there's some hindrance to the possessor of the right from asserting its claims. Here, there's no hindrance to Cinemark coming in and saying, hey, we think that this proposed development once the claim becomes ripe because there are ripeness issues in this case, but once the claim becomes ripe, if Cinemark truly felt that it would be harmed by Rockwall Rentals' proposed development, Cinemark could assert its own rights. There's no hindrance to Cinemark doing so. The only thing we have in the complaint, we don't know what Cinemark does, and the only thing that's in the complaint, and actually this is an attachment to the plaintiff's complaint at 729 of the record, there's a letter from T.F. Harvard's lawyers to Rockwall Rentals saying, don't talk to Cinemark or we'll sue you for tortious interference. So, we don't know what Cinemark's doing. But it leads to the issue of why courts don't allow third parties standing like this. How concrete are your development plans at this point in time? Well, as we said in the district court and in the brief, we do not believe they're complete enough to have a ripe controversy. All there is, is that conceptual development one-page document that's attached as an exhibit to the ordinance. There is no site plan. There is no subdivision plot. There's no architectural review. We don't have anything along those lines. Before you go get a building permit, you have to meet all those steps. Then you go down to City Hall and you show all your plans and you try to get a building permit. We don't have any of that. And that's another reason why it's not ripe. Until we know what the city may actually allow, we're not really going to be able to have the factual record in order to make a determination as to whether or not there would be any violation of these restricted covenants. But I think there's a more fundamental problem is the fact that these are Cinemark's rights we're really talking about and not T.F. Harvard's rights. They claim they'll have these rights, but they only flow from the supposition that Cinemark may have some sort of objection to this. They may. They may not. It's certainly not in the complaint at all. Unless there are any other questions? A few quick points in rebuttal. Thank you. Your name is on our recording. Thank you. With respect to the restrictive covenant argument, counsel for the defendant is right that it is a state law issue. And of course, although the judge refers to it, it doesn't restrict our contracts claim in any respect. Well, of course it does. Well, not if they went ahead and passed an ordinance in violation of those, Your Honor, that allows that. And turning to the language of the ordinance, there are a number of important features. The court is obviously concerned... If state law constrains what the city can do, you're certainly going to argue that at some point in time, are you not? Well, we will. I think we did here. And I think we will in any state court case. But... Isn't it to your advantage that the court did in fact find that restrictive covenant? That part is helpful to us. You may lose this case, but you may win that point. Right. I understand that, Your Honor. And turning back to this case... Unless, of course, we decline to write on it or disavow what the judge wrote. Turning... Yes, Your Honor. I don't disagree that those remedies and those causes of action are still out there based on the court's decision. I want to turn to the ordinance briefly because it comes up in the context of the concern this court has for rightness. And the reason I want to address it is several points, and then I'll talk vagueness for a moment. This ordinance is a comprehensive ordinance as to this special project. And when you look at its terms, it says several things. But it does say each one of these steps that is in Section 2 and 3 of the ordinance, the architectural design, the planning and development, all shall be done pursuant to this ordinance. So even though Rockwall Rental Properties has not yet moved past the steps they've taken to get the ordinance passed, the ordinance itself requires them to take the very steps this court has concerns about with respect to rightness. It covers that. So those elements are out there in the ordinance, in the ordinance that violates the restrictive covenant. One last point. We challenge this on vagueness. And Judge Fitzwater, likewise, tossed that challenge out. And there's just a few points I want to make with respect to that. One, criminal ordinance. Two, it says that it will generally be in accordance with X and Y. And we would submit to the court that you can't have a criminal ordinance that only has to be generally followed. Well, how do you have the right to assert that because it would be Rockwall Rental, would it not? That could arguably violate the law criminally. Well, it depends on who the ordinance would be enforced against. And I guess our authority for that is in the Rectory Park case where it says an adjacent landowner can be affected by zoning regulations on a contiguous property and can have a cause of action in that context. Last point with respect to the ordinance. In addition to those the other side of the ordinance, of course, does not comply with state law and raises a vagueness in due process issue. Under the Penal Code for the State of Texas if you're going to have an ordinance that assesses more than a $500 fine under a Class C misdemeanor, you have to have a state of mind. You have to define that. And we would submit to the court that this ordinance does not have that and it's void for those reasons. Um Cinemark's absence, and I don't want to be overly repetitive, but T.F. Harbor's obligations are to prevent anyone else from violating these restrictions. And that obligation runs to us. Cinemark is not involved with it and it's that obligation which leads to the lawsuit. If there are no further questions, thank you. Alright, we appreciate your argument. We will stand in recess. That's the conclusion of our cases this week.